**FILIPELE LEOMITI, for himself and on behalf of the
LEOMITI FAMILY, Plaintiffs**

**v.**

**PELE PU`EFUA, Defendant**

High Court of American Samoa
Trial Division

LT No. 5-94

March 15, 1995

Before RICHMOND, Associate Justice, AFUOLA, Associate
Judge, and LOGOAI, Associate Judge.

Counsel:     For Plaintiffs, Afoa L. Su`esu`e Lutu
             For Defendant, Asaua Fuimaono

Opinion and Order:

Plaintiff Filipele Leomiti ("Leomiti") brought this action for eviction
and injunctive relief, alleging that defendant Pele Pu`efua ("Pu`efua")
was trespassing on plaintiff Leomiti family's communal land.  Pu`efua
responded by asserting that he was present on the land with Leomiti's
permission and counterclaiming, alternatively, for specific performance
of a separation agreement for a residence, authorized under A.S.C.A.
§§ 37.1501-37.1506, or damages for its breach.

150

Under A.S.C.A. § 43.0302, three hearings were conducted in December 1993 during the required dispute resolution proceedings before the Secretary of Samoan Affairs. The Deputy Secretary issued the certificate of irreconcilable dispute on January 3, 1994.

Trial was on January 19 and 20, 1995. Both Leomiti and Pu`efua were present with their counsel.

## FINDING OF FACTS

Leomiti is the senior chief or sa`o of the Leomiti family of the Village of Pava`ia`i, American Samoa. The Leomiti's communal land at issue, named "Fenuinuiaitu," consists of approximately 0.6894 acres located in Pava`ia`i.

Pu`efua migrated from Western Samoa in 1973. Presently, he lives with his parents on communal land owned by the Ava family, also of Pava`ia`i. He is a trained mechanic and operates a motor vehicle repair shop on leased land in the Village of Nu`uuli, American Samoa. He is not a blood member of the Leomiti family.

In 1992, Leomiti's nephew Sonny Leomiti ("Sonny") returned to American Samoa from the states with his wife. Sonny became a welder and his wife an office worker at Pu`efua's repair shop in Nu`uuli. Pu`efua testified that Sonny and his wife were his employees rather than business associates, although they had no set salary and were compensated for their work as they needed funds.

Regardless of the nature of this relationship at the Nu`uuli repair shop, Pu`efua decided to join forces with Sonny to obtain use of the land at issue. He recognized that Sonny as a Leomiti family member could provide "insurance" (Pu`efua's characterization) for his future on this land. Pu`efua claimed that he wanted the land primarily for his own house and possibly later for his business interests. He also stated that Sonny intended to build a house nearby.

Pu`efua and Sonny approached Leomiti in January or February of 1993 regarding use of the land for a joint business venture. Leomiti, motivated to help his recently returned relative, verbally assigned occupancy of the land to Pu`efua and Sonny for their business

151

operations.[1]

Later, on or about February 18, 1993, Leomiti signed an agreement, establishing separate ownership by Pu`efua and Sonny of a dwelling house to be erected on the land. This document was prepared by Pu`efua's wife. Pu`efua presented it to Leomiti, without any explanation or discussion of its legal significance. Although Pu`efua and Sonny are named as the building owners, the document does not bear their signatures. The name of the land is shown as "Fuaiupu" in the agreement which was clearly altered to do so. Pu`efua admitted to making this alteration which, at a minimum, was a mistake. The document includes an approved survey of the land. Pu`efua testified that this survey is based on boundaries previously shown to Pu`efua by Leomiti. However, Leomiti was not present when the survey was made, and the site as shown is larger than the area authorized by him. Despite the obvious alteration and execution defects, the Territorial Registrar recorded the agreement on March 31, 1993.

In June 1993, Sonny and his wife returned to the states. Leomiti understood that Sonny had left the territory because the business relationship between Pu`efua and Sonny had soured. Pu`efua testified that the relationship was not strained, and that Sonny's wife simply wanted to leave. Either way, Sonny left and was no longer occupying the land. Hence, Leomiti decided to rescind Pu`efua's permitted business use of the land. In July or August 1993, Pu`efua prevented the family members, sent by Leomiti, from replanting the area. The next day, Pu`efua apologized for his actions. Nonetheless, Leomiti told Pu`efua to vacate the land.

Pu`efua, however, had already spent a considerable amount of money developing the land. At the time Sonny left the territory, Pu`efua had already cleared the land, removing numerous coconut, breadfruit and banana trees. By the time Leomiti directed him to leave, Pu`efua had erected the foundation and walls of a building which he intended to be his house, rather than business premises. Further, he had relocated motor vehicles in various states of disrepair onto the land. Thus, in short, he disregarded Leomiti's directive and carried on his construction and other use of the land. He even brought others to the land to watch over his interests. They lived in a shack near the house

---

[1] Pu`efua did provide traditional service or tautua to Leomiti on one or two occasions after this assignment.

under construction.

This state of affairs continued even after Leomiti's present counsel wrote to Pu`efua on October 14, 1993, and demanded his departure from the land. Finally, Pu`efua ceased construction, at least with his present counsel's advice pending the outcome of this case, when the American Samoa Government's Development Planning Office effectively terminated his building permit as of January 6, 1994, and this action was filed on January 7, 1994.

## CONCLUSIONS OF LAW

1. Pu`efua deliberately concealed his true intention of finding a location to build his house, when he and Sonny obtained Leomiti's verbal occupancy authority.

2. Pu`efua furthered this misrepresentation by securing Leomiti's signature on the separation agreement by consciously and deceptively avoiding explanation or discussion of its legal effect.

3. Pu`efua, by his own admission, altered the separation agreement and inserted an incorrect name for the land. We find that this change is a material defect. This court has held that a material failure to accurately describe land or parties is sufficient to render a separation agreement invalid. *Meredith v. Aumavae*, 4 A.S.R. 680, 682 (Trial Div. 1965). One would scarcely question materiality where a groom incorrectly changed the name of his bride after she had signed the marriage license, or of an automobile purchaser who changed the description of the vehicle after he had signed the purchase agreement. Pu`efua could no more obtain an interest in Fenuinuiaitu by recording the name Fuaiupu, than he could legally marry Sina by recording the name Losa on the marriage license.

4. Neither Pu`efua nor Sonny signed the separation agreement.

5. The land as surveyed and described in the separation agreement was larger than Leomiti had authorized for business use.

6. Under these circumstances, we find that the separation agreement is null and void. We also find that Pu`efua's only interest in the land is a revocable license, which Leomiti clearly revoked.

7. Leomiti is entitled to have Pu`efua evicted from the land and

153

permanently enjoined from undertaking any construction, any business operations, or any other activities on the land.

8. Leomiti is also entitled to have Pu`efua required to remove the motor vehicles which Pe`efua deposited on the land.

■ 9. After eviction, former possessors of land are entitled to remove fixtures and possessions, even where they exercise their licenses in bad faith. *Aufata v. Afatia*, 5 A.S.R.2d 158, 160 (Land & Tit. Div. 1987); *Roberts v. Sesepasara*, 8 A.S.R.2d 124, 130-31 n.1 (Trial Div. 1988). When possessors of land are evicted, having exercised their licenses in good faith, they are entitled to the choice of either removal of improvements or compensation for expenses incurred in reliance on the license. *Aufata*, 5 A.S.R.2d at 158; *Roberts*, 8 A.S.R.2d at 131-32. We find that Pu`efua exercised his license in bad faith, in light of: (1) his attempt to change the name of the land without informing Leomiti, nor obtaining his consent; (2) his neglect of Leomiti's directions to cease construction activity; (3) his action in bringing others to the land to secure his activities; and (4) his successful attempt to mislead Leomiti as to his intended use of the land when securing Leomiti's verbal permission to conduct a business on the land and later Leomiti's signature on the separation agreement.

### ORDERS

1. Pu`efua is evicted from the land at issue, effective immediately.

■ 2. Pu`efua has permission to enter the land, for a period not exceeding 60 days after the entry of this order, to remove at his option, other than the deposited motor vehicles, any improvements, possessions and fixtures belonging to him. If such items are not removed within that time, they shall become the Leomiti family's property. *Laulu v. Taaseu*, 23 A.S.R.2d 1, 6 (Land & Titles Div. 1992).

3. During the foregoing 60-day period, Pu`efua shall remove the motor vehicles which he deposited on the land. If he fails to remove these motor vehicles during this period, Pu`efua shall, upon Leomiti's motion, be subject to pay Leomiti's cost of their removal and other applicable damages.

4. Pu`efua, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, are

permanently enjoined from entering the land after the 60-day period, and from undertaking any construction, any business operations, or any other activity on the land at any time without Leomiti's permission.

It is so ordered.